## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT BOSLEY,

                Plaintiff,

    v.

COPART OF CONNECTICUT, INC

             Defendant.

Civil Action No.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Albert Bosley, by his attorneys, Stember Cohn & Davidson-Welling, LLC, brings the following Complaint against Copart of Connecticut, Inc. ("Defendant" or "Copart"), and alleges the following in support:

### PRELIMINARY STATEMENT

1.     Plaintiff Albert Bosley brings this civil action against Defendant Copart of Connecticut, Inc., which employed him from approximately May 4, 2015 until his termination in December 2015.

2.     As set forth in greater detail below, Copart denied Plaintiff's requests for reasonable accommodations, and terminated Plaintiff because of his disability.

3.     Defendants' actions violate the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et. seq*; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et. seq*.

### PARTIES

4.     Plaintiff Albert Bosley ("Plaintiff" or "Bosley") is an adult individual who resides in Allegheny County, Pennsylvania.

5.      Defendant Copart of Connecticut, Inc. ("Copart") is a corporation registered in the Commonwealth of Pennsylvania, and is headquartered in Dallas, Texas.

6.      At all relevant times, Copart employed more than 50 employees.

7.      At all relevant times, Copart has been an "Employer" within the meaning of the ADA and the PHRA.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his related state law claims under 28 U.S.C. § 1367.

9.      Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Western District of Pennsylvania, as the facts and causes of action asserted arose from events that occurred in Allegheny County, Pennsylvania, where Copart operates one or more salvage yards.

## FACTS

10.     Plaintiff Bosley is an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), as amended, and the Pennsylvania Human Relations Act ("PHRA").

11.     For over 15 years, Bosley has lived with a digestive disorder known as gastroparesis. This condition causes, *inter alia*, severe abdominal pain, nausea, dehydration, and kidney failure.

12.     Bosley's gastroparesis substantially limits several major life activities, including digestion, sleeping, and working.

13.     While Bosley takes medication to manage his symptoms, these medications do not eliminate all symptoms or effects of his condition. As a result, his condition often requires medical treatment, up to and including hospitalization.

14.     In or around May 2015, Bosley applied for a position at Copart.

15.     Randy Heifner, Copart's General Manager, interviewed Bosley.

16.     During that interview, Bosley disclosed his gastroparesis and medications to Heifner, because Bosley knew that his oxycodone prescription could trigger a positive test for an otherwise-illegal substance.

17.     Bosley also disclosed to Heifner and others that, while his gastroparesis was manageable, it would still occasionally require Bosley to be absent from work because of scheduled medical appointments and unexpected "flare ups" of his condition. Heifner did not inquire any further, and did not give any indication that Bosley's medical condition would be a problem for Copart.

18.     After the interview, Heifner offered Bosley a job at Copart as "Yard Agent," which Bosley accepted.  In that role, Bosley's main duties were cleaning newly arrived vehicles, separating any private information and documents from the vehicle's owner and recording what was located in or removed from the vehicle.

19.     Despite his gastroparesis, Bosley was able to perform all the essential functions of his position. In fact, except for pre-scheduled medical appointments, Bosley performed his duties without needing to miss work until July 2015. At that time, he experienced a flare up of his gastroparesis, which led to Bosley being hospitalized from July 6-July 10, 2015.

20.     During that time, Bosley informed Copart management that he was hospitalized because of his condition. Bosley's direct supervisor, Mr. Maggio, told him to bring

documentation of the reason for his absence when he returned to work, but did not indicate that his absence was a "problem" in any respect.

21.     Bosley returned to work on July 13, 2015, and he provided the requested documentation.  At that time, Mr. Maggio informed Bosley that Heifner had said he wanted to terminate Bosley's employment because his medical condition made him "a liability."

22.     That same day, Heifner issued Bosley a "write-up" for missing work during his 90-day probationary period, despite Bosley providing the requested documentation.

23.     When issuing this discipline, Heifner told Bosley that his medical absence "can't happen again." Bosley explained that he has a medical condition that he cannot control, and that if he fails to seek proper medical attention, he could experience kidney failure or even death.

24.     In other words, Bosley made it absolutely clear that, because of his medical condition, he might occasionally need a reasonable accommodation, e.g., that Copart excuse his attendance when his medical condition required sudden or unexpected medical attention.

25.     Nevertheless, Bosley continued working at Copart without any issues for several months. While he did have a few additional days of absence, all of those absences were treated by Copart as "excused." Indeed, Bosley was paid for all other absences, and did not even exhaust his allotment of paid time off.

26.     In late November 2015, Bosley's gastroparesis unexpectedly flared up again.

27.     On November 27, 2015, Bosley left work early due to severe pain in his kidney. Bosley notified his direct supervisor, who granted Bosley permission to leave immediately.

28.     On November 29, 2015, Bosley was taken to UPMC Mercy Hospital via ambulance. Two days later, his condition worsened, and he was admitted to Jefferson Regional Hospital, where he remained until his was released on December 10, 2015.

29.     Bosley's sudden need for extended hospitalization was not a common event in his life. He has not been hospitalized for that long before, nor since.

30.     Throughout Bosley's hospitalization, he kept in regular contact with Copart management to inform them of his continued hospitalization.

31.     Bosley was released on December 10, 2015, and authorized to return to work on December 14, 2015.

32.     When Bosley arrived at work on December 14, 2015, he was greeted by the office/administrative employees, who were all relieved that he had been released and able to return.

33.     Bosley then went to Heifner's office to provide him with his written medical excuses.  After briefly glancing at Bosley's medical documentation, Heffner set them aside and handed Bosley a termination notice.

34.     The termination notice stated that Bosley was being terminated for failing to call in during his absences. Bosley told Heifner that was not true, and reminded Heifner that he had repeatedly called in, despite being hospitalized, to make sure Copart was aware of the reason for his absence. Heifner replied, "well, regardless we decided to let you go."

35.     In short, by terminating Bosley for his absences during hospitalization, Copart failed to accommodate Bosley's disability by failing to excuse those absences. Granting Bosley this modest accommodation would clearly not have been a "hardship" on Copart.

36.     Indeed, had Bosley been employed for just six more months, Copart would have been obligated to excuse those absences not only as a matter of reasonable accommodation, but as a requirement under the Family Medical Leave Act. *See generally* 29 U.S.C. 2615 (prohibiting employers from "interfering" with employees' right to take medical leave).

37.     Further, by terminating Bosley for his absence during hospitalization, Copart discriminated against Bosley based on his disability. As a matter of both policy and regular practice, Copart permits other non-disabled employees to miss the same number of work days, or more, without risking termination.

38.     As a result of Defendant's discrimination and failure to accommodate, Bosley has suffered, and will continue to suffer, a substantial loss of earnings, including, but not limited to, loss of salary, benefits, and other emoluments of employment.

39.     As a further direct and proximate cause of Defendant's disability discrimination and retaliation, Bosley has experienced emotional distress.

40.     Defendant acted willfully and in reckless disregard of Bosley's rights under the the ADA and the PHRA by denying him reasonable accommodations, and discharging Bosley on account of his disability and/or perceived disability.

41.     Plaintiff has exhausted all administrative remedies prior to filing this action.

## COUNT I – VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
### (Disability Discrimination)

42.     The foregoing paragraphs are incorporated by reference.

43.     At all relevant times, Defendant was an "employer" within the meaning of the PHRA.

44.     At all relevant times, Plaintiff's medical conditions rendered him an individual with a disability under the PHRA.

45.     At all relevant times, Plaintiff was perceived by Defendant to be suffering from a disability.

46.     Plaintiff was disciplined and ultimately terminated by Defendant because he suffered from a disability and/or because Defendant regarded him as disabled.

6

47.     As a result of Defendant's actions as described above, Defendant violated the

PHRA, causing Plaintiff to suffer damages.

## COUNT II – VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
### (Failure to Accommodate)

48.     The foregoing paragraphs are incorporated by reference.

49.     Plaintiff requested reasonable accommodations and/or his need for reasonable

accommodations was obvious to Defendant.

50.     Defendant could have granted Plaintiff's need for accommodation without undue

hardship, but refused to do so.

51.     Although Defendant denied Plaintiff's requested accommodation, it did not

propose alternative accommodations or otherwise engage in the interactive process.

52.     As a result of Defendant's actions as described above, Defendant violated the

PHRA, causing Plaintiff to suffer damages.

## COUNT III – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination)

53.     The foregoing paragraphs are incorporated by reference.

54.     At all relevant times, Defendant was an "employer" within the meaning of the

ADA.

55.     At all relevant times, Plaintiff's medical conditions rendered him a qualified

individual with a disability under the ADA.

56.     At all relevant times, Defendant regarded Plaintiff as disabled.

57.     Defendant discriminated against Plaintiff by terminating his employment because

of his disabilities and/or because Defendant regarded him as an individual with a disability.

58.     As a result of Defendant's actions as described above, Defendant violated the ADA, causing Plaintiff to suffer damages.

## COUNT IV – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Failure to Accommodate)

59.     The foregoing paragraphs are incorporated by reference.

60.     Plaintiff requested reasonable accommodations and/or his need for reasonable accommodations was obvious to Defendant.

61.     Defendant could have granted Plaintiff's need for accommodation without undue hardship, but refused to do so.

62.     Although Defendant denied Plaintiff's requested accommodation, it did not propose alternative accommodations or otherwise engage in the interactive process.

63.     As a result of Defendant's actions as described above, Defendant violated the ADA, causing Plaintiff to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Bosley respectfully requests that the Court find in his favor on all counts, enter judgment on his behalf, and award him:

a)     Back pay and front pay, lost benefits and emoluments of employment;

b)     General, consequential and compensatory damages;

c)     Liquidated damages;

d)     Punitive damages;

e)     Medical and related expenses;

f)     Interest and costs of this action;

g)     Reasonable attorneys' fees; and

h)     Any other relief that the Court considers proper.

Respectfully submitted,

Dated: October 30, 2017                    /s/Vincent J. Mersich
                                           Vincent J. Mersich, Esquire
                                           PA ID No. 310971
                                           vmersich@stembercohn.com
                                           **STEMBER COHN &**
                                                 **DAVIDSON-WELLING, LLC**
                                           The Hartley Rose Building
                                           425 First Avenue, 7th Floor
                                           Pittsburgh, PA  15219
                                           T.:  (412) 338-1445
                                           F.:  (412) 338-1446

                                           *Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT BOSLEY, | Civil Action No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| COPART OF CONNECTICUT, INC | |
| Defendant. | |

## <u>DEMAND FOR TRIAL JURY</u>

Plaintiff hereby demands a jury trial on all issues so triable in the above-captioned action.

Respectfully submitted,

Dated:  October 30, 2017

/s/Vincent J. Mersich
Vincent J. Mersich, Esquire
PA ID No. 310971
vmersich@stembercohn.com
**STEMBER COHN &**
**DAVIDSON-WELLING, LLC**
The Hartley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA  15219
T.: (412) 338-1445
F.: (412) 338-1446